**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| REGINALD R. THOMAS, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 05 C 2119 ) |
| UNITED STATES OF AMERICA, | ) Judge Rebecca R. Pallmeyer ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

On May 17, 2002, following a two week jury trial, Petitioner Reginald R. Thomas was found guilty of eleven counts of bank robbery under 18 U.S.C. § 2113(a). On September 4, 2002, this court sentenced Thomas to a total term of 230 months in prison. The Seventh Circuit upheld his conviction upon appeal. *United States v. Thomas*, 79 Fed. Appx. 908 (7th Cir. 2003), *cert. denied*, 124 S. Ct. 2926 (2004). Petitioner now seeks a writ of habeas corpus under 28 U.S.C. § 2255, challenging his sentence and conviction on constitutional grounds. Specifically, he claims that the court calculated his sentence based on factors not included in the indictment or found by the jury in violation of the Supreme Court's decisions in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004); that the trial court lacked jurisdiction because the indictment failed to allege the jurisdictional element of the crime; and that his defense attorney was ineffective for failing to challenge the sentence, the indictment, and the sufficiency of the evidence with respect to Count One.[1] This court now considers these issues.

---

[1] Petitioner in his reply brief raises the argument that he was illegally seized and unlawfully searched for the first time in the pursuit of this petition. (Pet. Reply at 3-7.) Arguments not raised in the opening brief are deemed waived. *United States v. Baylock*, 413 F.3d 616, 619 (7th Cir. 2005). In any event, the Seventh Circuit rejected Petitioner's search and seizure argument on the merits on direct appeal. *United States v. Thomas*, 79 Fed. Appx. 908, 911-13 (7th Cir. 2003).

## **BACKGROUND**

On February 20, 2001, a federal grand jury indicted Petitioner Thomas on eleven counts of bank robbery.[2]  (*United States v. Thomas*, No. 01-CR-67, Doc. 9.)  Count One of the indictment reads:

> On or about December 27, 2000, at Aurora, in the Northern District of Illinois, Eastern Division, REGINALD THOMAS, defendant herein, by intimidation did take from the person and presence of a teller at Harris Bank, 1252 North Lake, Aurora, Illinois, approximately $17,500 in United States Currency belonging to and in the care, custody, control, management, and possession of Harris Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation; In violation of Title 18, United States Code, Section 2113(a).

(*Id.*)  The remaining ten counts are worded almost identically, varying only in the date and location of the crime, and the amount of money taken.[3]  (*Id.*)

Petitioner's trial began on May 17, 2002.  The defense did not challenge the indictment as defective in any respect.  Without objection, the government presented several documents that established the amount of money each bank lost as a result of each robbery. (Tr. at 405, 606.)  The government also presented FDIC certificates for those banks, again without objection.  (*Id.* at 405-06, 607.)

In support of Count One of the indictment, the government called Christina Hess, a bank teller at the Harris Bank in Aurora, Illinois.  Hess testified that an African American man in his late 20's or early 30's, standing nearly six feet tall and thin[4] approached her teller window.  (*Id.* at 508, 521-22.)  Petitioner was 44 at the time of the alleged robbery. (Memorandum in Support of Motion

---

[2] An excellent summary of the circumstances leading to Petitioner's arrest and prosecution can be found in the appellate decision.  *See Thomas*, 79 Fed. Appx. at 909-11.

[3] The only exception is Count Five, in which the government charged an attempted robbery of the Northern Trust Bank of Oak Brook, Illinois, on January 5, 2001, and has not alleged that the bank suffered a loss attributable to Petitioner. (*United States v. Thomas*, No. 01-CR-67, Doc. 9.)

[4] The Harris Bank in Aurora, Illinois, has video cameras, but Hess's head blocked the camera's view of the robber. (Tr. at 526-27.) The government did not present this tape at trial.

to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (hereinafter, "Pet. Mem.,") at 12-13.) According to Hess, the robber produced a checkbook from a white envelope and initially asked her to cash a check. (Tr. at 508-09.) The robber then slid a small, handwritten note to Hess, which read: "This is a robbery." (*Id.* at 509, 520.) After Hess grabbed a stack of small denomination bills and attempted to place them in the robber's envelope, he instructed her to start with the larger denomination bills. (*Id.* at 509-11.) Throughout this interaction, Hess reports that the robber did not lean into her through the teller window, but rather remained standing straight up, telling her to hurry and to stay quiet in a calm voice. (*Id.* at 510-11.) Because the currency in Hess's drawer was too thick to fit in the robber's envelope, she handed the money to him. (*Id.* at 512.) Although Hess testified that she did not see how the robber exited the bank's parking lot, defense counsel's questions on cross-examination imply that she might have told an officer who arrived on the scene immediately afterwards that the robber had left in a light blue, medium-sized car. (*Id.* at 522-23.)

At trial, Hess admitted that she did not think she would recognize the robber nearly a year and a half after the events of December 27, 2000. (*Id.* at 514.) On February 1, 2001, however, just two months after the robbery, Hess did pick Petitioner from a six-candidate photo array shown to her by an investigating officer. (*Id.*) At the time of the identification, the officer had asked Hess how sure she was that the man she had identified in the photo array was the man who had robbed her bank. (*Id.* at 529.) Her response was that on a scale of one to ten, with ten indicating, the highest level of certainty, she was a seven. (*Id.*) In her words, it was "most likely" the same person. (*Id.*) On cross-examination, Hess acknowledged that Petitioner's photo was the darkest of the six and that Petitioner's face was thinner than four of the other candidates. (*Id.* at 525.) The defense also suggested that based on their pictures in the photo array, three of the candidates could not be in their 20's. (*Id.*) Hess, however, disagreed and thought that only two of the candidates were clearly not in their 20's. (*Id.* at 525-26.)

3

The government presented testimony from tellers at the other ten banks Petitioner was charged with robbing.[5] In court, each of these tellers identified Petitioner as the man who had robbed his or her bank.[6] (*Id.* at 53, 110, 163, 309, 339, 373, 414, 535, 564.) Each teller also picked Petitioner's photo from a photo line-up during the investigation following each robbery. (*Id.* at 44, 118, 172, 315, 345, 382, 417, 478, 542, 573.) These witnesses, further, identified articles of Petitioner's clothing and other items taken from Petitioner at the time of his arrest as belonging to the bank robber. Not all the details were identical. Some tellers reported that the bank robber carried a plastic bag rather than an envelope. (*Id.* at 74, 165.) Others testified that the bank robber leaned in close to them, rather than standing straight up. (*Id.* at 349, 472.) There was enough consistency, however, for investigators to dub the perpetrator the "Paper Bandit" and pursue a single suspect for all eleven crimes. (*Id.* at 670.)

Petitioner took the stand to testify in his own defense. He claimed innocence on all counts and suggested he was the victim of mistaken identity. (*Id.* at 831-33.) When confronted with evidence of large cash purchases following the robbery described in Count One, however, he did admit to purchasing a black car with cash on December 28, 2000, the day after that robbery. (*Id.* at 800-01.) Petitioner explained that he had borrowed the majority of the money for this purchase from his wife, whose own testimony corroborated that of the Petitioner. (*Id.* at 733, 800.) Petitioner also admitted using cash, mostly bills in large denominations, to purchase a diamond ring on the same date, but claimed he had earned the cash by remodeling his brother's house and by driving a limousine on weekends. (*Id.* at 824-25.) Petitioner's brother, Amos Thomas, confirmed that

---

[5] Additionally, the government offered surveillance tapes from the banks where they were available. (Tr. at 47, 126, 174, 378, 419, 480, 539.) The court notes that despite the relatively poor quality of the videos, the robber bore a clear resemblance to Petitioner in every video.

[6] Sapna Verma, the teller involved in the January 22, 2001 robbery of the West Suburban Bank in Bloomingdale, Illinois, did not formally identify Petitioner in court as the man who robbed her bank. (Tr. at 466-481.) Verma's West Suburban Bank colleague Heidi Schroeder did identify Petitioner as the man who robbed Verma's bank. (*Id.* at 449)

4

Petitioner had been living with him and remodeling his home during the relevant time period. (*Id.* at 740.) Amos Thomas testified that Petitioner rarely left the house, but cross-examination revealed that Amos could not provide Petitioner with a perfect alibi for any of the counts. (*Id.* at 749-75.)

This court also allowed Petitioner to call an expert witness, Dr. Geoffrey Loftus, to dispute the reliability of eyewitness identification in general. Dr. Loftus' testimony in this case was similar to testimony he has given in other prosecutions. *See*, *e.g.*, *United States v. Mathis*, 264 F.3d 321, 333-34 (3d Cir. 2001). Among other issues, Dr. Loftus testified on the tendency of memories to be altered by post-event information and the susceptibility of perception to errors elicited by environmental influences. (Tr. at 856-60.) In Dr. Loftus's opinion, the fact that multiple witnesses identified Petitioner as the bank robber could be consistent with the notion that Petitioner was not in fact the culprit. (*Id.* at 899.)

Nonetheless, the jury convicted Petitioner of eleven counts of bank robbery, and this court sentenced Thomas to a 230-month prison term. On direct appeal, Petitioner argued, unsuccessfully, that the police lacked probable cause for his arrest and that the district court erred in allowing the government to use his prior felony convictions to impeach him. *Thomas*, 79 Fed. Appx. at 909. The Seventh Circuit, however, affirmed the conviction, *id.* at 914, and the Supreme Court denied Petitioner's request for a writ of certiorari on June 28, 2004. 542 U.S. 945 (Mem.) (2004).

## **DISCUSSION**

Under 28 U.S.C. § 2255, an individual convicted of a federal crime is permitted to move the district court to vacate, set aside, or correct his or her sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255; *see also Bischel v. United States,* 32 F.3d 259, 263 (7th Cir.1994) (Collateral relief under § 2255 is available only for "an error of law

that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.").

Prior to reaching the merits of a petitioner's claims, however, the district court must determine that "the issue has been raised in a procedurally appropriate manner." *Theodorou v. United States,* 887 F.2d 1336, 1339 (7th Cir. 1989). A motion under § 2255 does not substitute for a direct appeal. The Seventh Circuit in *Galbraith v. United States* observed:

> When an issue is not raised on direct appeal, but later attacked collaterally via a petition for post-conviction relief, the petitioner will be barred from collateral review unless he can show good cause for failing to raise the issue and actual prejudice. . . . [In the alternate,] a showing that a refusal to consider the issue would be a fundamental miscarriage of justice can overcome the default.

313 F.3d 1001, 1006 (7th Cir. 2002). Petitioner raises his constitutional issues for the first time in this § 2255 petition. Accordingly, he must show cause for the procedural default as well as actual prejudice with respect to his claims (1) that in imposing this sentence, this court improperly considered facts not alleged in the indictment or found by the jury; (2) that the indictment was defective because it failed to include the grounds for federal jurisdiction over his crime; and (3) that his lawyer was ineffective for failing to challenge the sufficiency of the evidence with respect to Count One of the indictment.

I.  **Sentencing Claims**

Petitioner argues that the district court erred in relying on the presentence report when calculating Petitioner's sentence because that report considered factors not included in the indictment or found by the jury. (Pet. Mem. at 2.) Specifically, Petitioner objects to the suggested two-level enhancement he received because the target banks were FDIC insured (U.S.S.G. § 2B3.1(b)(1)); the suggested one-level enhancement he received because the loss to Harris Bank in Aurora, Illinois, exceeded $10,000 (U.S.S.G. § 2B3.1(b)(7)); the suggested two-level enhancement he received for obstruction of justice (U.S.S.G. § 3C1.1); and the suggested five-level adjustment he received for conviction on multiple counts (U.S.S.G. §§ 3D1.2, 3D1.4). (*Id.*)

6

Petitioner also asserts that the calculation of his category VI criminal history violates the Constitution because it required findings of fact not alleged in the indictment or found by the jury beyond a reasonable doubt. (*Id.* at 6.) According to Petitioner, the calculation of his criminal history category went beyond the mere finding of the existence of prior convictions, instead requiring a determination of the date of these offenses; whether Petitioner was a minor on these dates; and whether the convictions were for felonies. (*Id.* at 7.)

Petitioner did not raise these claims in his appeal and initially offered no explanation for his failure to do so, prompting the government to argue that Petitioner had procedurally defaulted on the ability to raise the argument now.[7] (Government's Response to Defendant's Motion under 28 U.S.C. § 2255 (hereinafter, "Govt. Resp.,") at 5.) In response, Petitioner states that the failure to challenge the sentence is in fact part of his claim that he received ineffective assistance of counsel, itself a violation of Petitioner's constitutional rights. (Petitioner's Reply to Government's Response to Defendant Motion under 28 U.S.C. § 2255 (hereinafter, "Pet. Reply,") at 8.) An ineffective assistance of counsel claim can, of course, be brought in a § 2255 petition, regardless of whether it could have been raised on indirect appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Such a claim will succeed, however, only if Petitioner can show that counsel's actions were "beyond the realm of reasonable professional judgment within the context of the case, at the time counsel acted," *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996), and that, if counsel's actions were unreasonable, they resulted in actual prejudice. *United States v. Wilson*, 414 F.3d 829, 830-31 (7th Cir. 2005) (observing in rejecting an ineffective assistance of counsel claim that "[h]ad trial counsel done exactly what his current lawyers prefer, [Petitioner] would still be serving a sentence of life

---

[7] Petitioner notes that this is not the first time he has raised these claims. Petitioner objected to his criminal history categorization at his sentencing. (Pet. Reply at 8.) This may be so, but even if Petitioner preserved the objection for appeal by raising it at trial, it is uncontested that he did not appeal the preserved objection. Failure to appeal a preserved issue has the same default effect as failure to preserve an issue for appeal. *See United States v. Johnson*, 335 F.3d 589, 592 (7th Cir. 2003) (arguments not raised on appeal are waived).

without possibility of parole.").

Petitioner's sentence became final well before January 12, 2005, the date upon which the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), and just four days after *Blakely v. Washington*, 542 U.S. 296 (2004), the decision concerning state guidelines that anticipated *Booker* in part. Trial counsel did not act unreasonably in failing to argue this theory before it became the law of the land. The Seventh Circuit has observed that an attorney's failure to anticipate *Blakely* and *Booker* does not constitute ineffective assistance of counsel. *See, e.g.*, *Fuller v. United States*, 398 F.3d 644, 651 n.5 (7th Cir. 2005); *cf. United States v. Smith*, 241 F.3d 546, 548 (7th Cir. 2001) (failure to anticipate *Apprendi* does not constitute ineffective assistance). Moreover, Petitioner cannot now avail himself of the *Booker* decision because, like the other *Apprendi* progeny, it does not apply retroactively to cases on collateral review. *McReynolds v. United States*, 397 F.3d 479, 480 (7th Cir. 2005).

## II.     Defective Indictment Claims

Petitioner also argues that the indictment by which he was convicted was defective in that it failed to allege a grounds for federal jurisdiction. (Pet. Mem. at 15.) Petitioner failed to raise this argument on direct appeal, and his current attempt to recast it as an ineffective assistance of counsel claim is a non-starter. Any failure on the part of defense counsel to challenge the indictment on this ground did not prejudice Petitioner. Petitioner concedes that the indictment states that the deposits were FDIC insured, but contends that this is not the same as saying that the bank itself was FDIC insured. (*Id.* at 16.) Petitioner cites the Ninth Circuit's decision in *United States v. Blajos*, 292 F.3d 1068, 1070 n.1 (9th Cir. 2002), for the proposition that not all deposits are insured by the FDIC. (Pet. Mem. at 16.) Notably, after making this point, the *Blajos* court held that prosecution under the federal bank robbery statute requires proof that the institution robbed was insured, not that the particular funds taken were. 292 F.3d at 1071-72. The *Blajos* decision, then, is consistent with the language of the statute under which Petitioner was convicted, which

8

applies specifically to "any institution the deposits of which are insured by the Federal Deposit Insurance Corporation."[8] 18 U.S.C. § 2113(f).

Shifting tactics slightly, Petitioner notes that even if the indictment was not defective, the grand jury could not have been presented with evidence sufficient to issue the indictment because the certificates of proof of each bank's FDIC-insured status presented at trial were dated April 30, 2001, and Petitioner was indicted several months earlier on February 20. (Pet. Mem. at 17.) Petitioner defaulted on this version of the jurisdictional argument by failing to raise it on appeal. In any event, the government notes that evidence may be presented in different forms to the grand jury and the petit jury. (Govt. Resp. at 15.) Nor has Petitioner shown that he has been prejudiced in light of the fact that the government presented this evidence to the petit jury and the petit jury found it to be a credible grounds for federal jurisdiction beyond a reasonable doubt. A case such as *United States v. Hooker*, 841 F.2d 1225 (7th Cir. 1988), cited by Petitioner, (Pet. Reply at 16), is distinguishable and inapposite. In *Hooker*, the indictment defect meriting reversal of the conviction was that the RICO indictment did not charge that the suspect enterprise had an effect on interstate commerce, an essential element of that offense. 841 F.2d at 1227; *see also United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979) (presenting a similarly defective indictment). No such infirmity exists here.

### III. Sufficiency of the Evidence Claim

Finally, Petitioner contends that counsel was ineffective for failing to challenge the sufficiency of the evidence on Count One. (Pet. Mem. at 13.) Petitioner notes that the government's witness for Count One, Hess, was unable to make an in-court identification and

---

[8] Petitioner also repackages this defective indictment argument as an ineffective assistance of counsel claim (presumably, to avoid the default issue), (Pet. Mem. at 11) ; however, as the forgoing discussion illustrates, because the argument would have failed, Petitioner was not prejudiced by his counsel's failure to raise it.

qualified her own out-of-court identification of Petitioner as being only certain at a level of seven out of ten. (*Id.* at 13-14.) Furthermore, Hess reported being robbed by someone in their late 20's or 30's; Petitioner was 44 at the time of the crimes. (*Id.*) Petitioner also contends that Hess told an investigating officer that the robber had fled the scene in a light blue vehicle while Petitioner drives a black car. (*Id.*) In addition, Petitioner claims that Hess's description of the robbery differs from that of other witnesses' descriptions of their later robberies. (Pet. Reply at 17.)

The court concludes that counsel was not ineffective for failing to challenge the sufficiency of the evidence with respect to Count One because such a challenge would have been unsuccessful. Evidence is insufficient only if, viewing the evidence in the light most favorable to the verdict, the record contains no evidence from which the jury could find guilt beyond a reasonable doubt. *United States v. Chavin*, 316 F.3d 666, 672 (7th Cir. 2002); *see also United States v. Hoover*, 175 F.3d 564, 570 (7th Cir. 1999) ("A defendant has a heavy burden in challenging a conviction based on the sufficiency of the evidence."). Hess's failure to make an in-court identification is not dispositive. In fact her candid response to the question of whether she could identify a face she had seen a year and a half earlier might have bolstered her credibility with the jury. Hess's out-of-court identification is sufficient to support the jury's verdict. Hess herself equated her "7 out of 10" qualification with the idea that the Petitioner was "most likely" the same person as the bank robber. (Tr. at 529.) A jury could reasonably have accepted Hess's identification of Petitioner in spite of her caution, and in spite of her underestimation of Petitioner's age.

Assuming that Hess made any statement about what color car Petitioner drove on December 27, 2000, the jury was also entitled to discount this discrepancy in light of the fact that Petitioner admitted to purchasing his black automobile in a cash transaction on the day after the robbery alleged in Count One. (*Id.* at 800-01.) The jury was not required to find that the *modus operandi* proposed by investigators to apprehend the bank robber was accurate in order to convict

Petitioner for the crime set out in Count One of his indictment. In challenging the sufficiency of the evidence against him, Petitioner is not entitled to ignore other circumstantial evidence that supports the jury's finding. For instance, Petitioner, who was only marginally employed, made large purchases in cash on the day following the robbery alleged in Count One. Although Petitioner offered an explanation as to where he came across the cash to purchase a car and a diamond ring the day after a major bank robbery, a reasonable jury is entitled to disbelieve that testimony.

## CONCLUSION

For the reasons stated above, the petition for writ of habeas corpus is denied.

ENTER:

Dated: May 5, 2006

_____
REBECCA R. PALLMEYER
United States District Judge